## RACHEL YORK *vs.* INHABITANTS OF ATHENS.

## Somerset.    Opinion May 25, 1904.

*Way.*    Notice of defect.    Questions for jury.    *Exceptions,* not supported by testimony.
*New Trial,* denied.

In an action to recover damages received through a defect in the highway, the defect relied upon and the one specified in the fourteen days notice was described as follows. "Numerous large pieces of granite piled up along the edge and in the wrought part of the highway, for a distance of two hundred feet southerly from the south end of the bridge in the traveled part, and on the westerly side and in the westerly ditch of said highway. Said stone or pieces of granite being from four to ten and twelve feet in length, and varying in width and thickness from one to three feet. In consequence of which the horse became frightened" and caused the accident that produced the injury complained of.

*Held;* that a pile of rocks or any other obstruction, partly within and partly without the wrought part of the way, the part within constituting a defect per se, constitutes a defect, provided the proof goes further and shows that it is calculated, as a whole, to present an appearance that would be likely to frighten ordinary horses; and the appearance of the object is such that it should be reasonably expected by the town that it might naturally have that effect.

*Held;* that the notice was sufficient to require the submission to the jury of the questions of fact, first, whether a part of the granite was so placed in the wrought part of the way as to constitute a defect, per se; and second, whether the pile of rocks as a whole was calculated to frighten ordinary horses.

The object of that part of the notice here considered is simply to describe the nature and location of the defect. It is not for the court to say primarily whether what it describes is a defect or not,—that is ordinarily a question of fact for the jury. The province of the court is to determine whether the notice upon its face describes with sufficient accuracy the nature and location of the defect alleged to warrant a submission to the jury of the question whether, what is described is a defect, and *the* defect claimed.

Exceptions will be overruled for refusing to give an instruction to the jury when not supported by the testimony in the case.

*It is considered by the court,* upon a motion for a new trial, that careful reading of the testimony and an examination of the photographs of the locus, do not show that the jury so erred in finding a verdict for the plaintiff as to warrant its being set aside.

On motion and exceptions by defendant.   Overruled.

Case to recover damages for injury sustained by the plaintiff on the 13th day of June, 1900, by a defect in the highway in the defendant town, leading from Athens Village to Brighton.   The jury returned a verdict for the plaintiff for $687.50.

The case is stated in the opinion.

### CHARGE.

Gentlemen of the Jury:—

The plaintiff in this case, in her writ, complains in substance that on the 13th of June, 1900, as she was traveling along a country road between Brighton and Athens,—a road which the defendant town was bound to keep in repair so that it would be safe and convenient for travelers with their teams,—that the horse which was being driven by her husband, who accompanied her, became frightened by numerous blocks of granite extending southerly from the bridge along the highway for a distance of two hundred feet; some in the traveled path, and some on the edge or bank of the road and some in the ditch; and that, in consequence of that fright, she was thrown from a carriage and received severe bodily injury.   That, in substance, is her complaint, and that, in substance, together with some other things which the law imposes, she is bound to prove by a preponderance of the evidence in order to establish her case.   Now, in this case, there is no question made by counsel but what this was a road that the town of Athens was to keep in repair.   They are bound to keep their roads in repair so that they shall be safe and convenient for travelers with their horses, teams, and carriages, but that does not mean absolutely safe.   Towns, as has been said to you, are not insurers and the law imposes no such burden upon the municipalities of this State as that they are obliged to keep their roads absolutely safe.

They are bound to keep them reasonably safe and convenient for those who travel upon them with their teams and with horses which are reasonably kind and gentle, safe and broken to travel along our public highways, and driven by those who are themselves in the exercise of due care at the time.   So you see, in determining the ques-

tion of whether a highway or road is safe within the meaning of the law, and that is the definition which I have given you as reasonably safe, it is necessary for you to take into consideration all the attendant facts, conditions and circumstances, and determine whether the road, under all those circumstances, was reasonably safe for a traveler.

In the first place, as I have said, no question is made in regard to the road but that the defendant town was bound to maintain it. No question is raised in this case but what the plaintiff was a traveler upon the road, one towards whom that obligation was due at the time of this alleged injury and accident. It is incumbent upon the plaintiff to satisfy you by a preponderance of evidence, that this defect which she has set up in her writ existed upon the face of the earth substantially as she has set it out. That is, the proof must correspond substantially to the allegation in that respect as to the defect, which is alleged to be numerous large blocks of granite for a distance of two hundred feet along the highway and in it, and on the westerly side of it, south of the bridge. It is incumbent upon her, in order to recover, to satisfy you — always by a preponderance of the evidence, which you understand does not necessarily mean by more witnesses than are produced by the other side upon a given point, but by evidence, whether it comes from more or less witnesses which, after carefully weighing and considering in your minds and judgments, is entitled to greater weight than that which is opposed to it — that those rocks situated in substance as she has described them in her writ, frightened the horse which was being driven there by her husband. If the horse was frightened by something else, then the plaintiff could not recover in this case, and upon that the parties, as you will recollect, are sharply at issue. The plaintiff claims, relying upon the testimony of herself and her husband, upon the conduct of the horse and the attendant circumstances, that the horse was frightened by those blocks of granite. The defendant, on the other hand, claims that it was not the blocks of granite, but that it was the bridge which frightened the horse, — a swaying, and teetering of the bridge, as it has been called; and the defendant also relies upon the testimony of the plaintiff and her husband to establish

its side of that proposition, claiming that when closely scanned and analyzed it shows that the defendant's contention is correct in that. The defendant also relies upon the conduct of the horse and the attendant circumstances. It is for you to determine who is right in regard to that, that is, what is the truth in regard to it. Truth is always right in cases between parties and towns, or anyone else, and unless the plaintiff satisfies you by a preponderance of the evidence upon that branch of the case, then she could not recover in this suit.

As I have already said to you, if the fright was occasioned by any other cause, no matter if it was a cause for which the town was liable, — by a defective bridge,— then she could not recover in this case, because that is not the claim which she has made here, and for various other statutory reasons. She must satisfy you further that those rocks, through the fright of the horse, were the proximate cause of the injury which she received by her being thrown from the carriage. It is difficult to define that to you exactly. As a general proposition, what the proximate cause is depends very largely upon the circumstances of each particular case, but, in general, it is that cause which in unbroken and continuous sequence, without the intervention of any other cause, produced the result complained of—one link in the chain following another. . That will give you an idea which you can apply to this case. It is necessary further that the plaintiff should satisfy you by the weight of evidence, that the injury which she received was due to no fault of the horse and in this case, as her husband was the driver of her,— of the husband in driving and managing the horse, or in the horse itself,—and there, again, the parties are at issue. You see towns are obliged to keep their ways safe and convenient, as I have said before, for travelers who are themselves in the exercise of due care, and if the injury happens through any lack of due care on the part of the plaintiff, then the plaintiff cannot recover. The burden is upon the plaintiff to satisfy you affirmatively,—as an affirmative proposition,—that she was in the exercise of due care and in this case that her husband, in driving the horse and managing the team, was in the exercise of due care, and that the injury was not due to any fault in the horse.

Some testimony has been introduced as to the conduct of this horse upon other occasions. Certain misconduct is claimed by the defendant,— certain things which indicate that the horse was an ugly, skittish and perhaps ill-broken horse. Testimony has been introduced by the plaintiff tending to support her claim that it was a proper horse to drive along our public roads,— that it was kind and gentle, and reasonably safe. The defendant, as you recollect, also, in the support of its contention upon this proposition, calls your attention to statements said to have been made by Mrs. York at the time of the injury :— immediately afterwards, to the effect that she would never ride after the horse again, and that she would not ride home after the horse; and to statements of Mr. York, alleged to have been made by him, that he would never ride after the horse again,— showing, as the defendant claims that both the plaintiff and the husband at that time knew that the injury was due to some fault in the horse, as not being sufficiently well-broken, or being shy or skittish, and not reasonably safe, kind and gentle, and at the very time of the injury attributed it to that fact. On the other hand, you recollect the plaintiff's position that, even if such expressions were made, too much importance should not be attached to them, that they would be the natural outcome of such an accident following, as the plaintiff claims upon the driving of even a reasonably safe, kind and gentle horse. Well, what was the fact, about that? Has the plaintiff satisfied you by the weight of evidence, in regard to the horse,— that the injury was due to no fault of the horse?

I understand the parties to be at issue upon the question of whether the plaintiff's husband was in the exercise of due care at the time. The burden is upon the plaintiff to satisfy you of that fact. The husband being the driver, and on account of that relation existing between them any want of due care on his part in the driving or management of the horse, would bar her recovery. Due care is that care which prudent men ordinarily exercise under similar circumstances, or like circumstances; and the want of that is negligence. Negligence is the want of due care. Now, the burden is upon the plaintiff to satisfy you affirmatively in regard to the exercise of due

care on the part of herself and her husband. You have heard their description of the accident,—his description of how he drove and managed the horse, and the behavior of the horse. You will consider all the evidence bearing upon each one of these propositions, whether it has been alluded to by counsel upon the one side or the other, or alluded to by myself. I do not intend to allude in any detail to the testimony.

On the other hand, the defendant sets up various matters, as I understand, claimed to show a want of due care on the part of the husband. There is some evidence coming from Mr. Cushman that, at one time, immediately after the accident had occurred, he saw Mr. York holding the reins with one hand, the other hand being upon the back of the wagon, or over the back of the wagon. Of course, if you are satisfied that that is the fact, that may be of importance in your minds as tending to show how he was driving at the time the accident occurred. I call your attention to the application of that testimony in case you become satisfied of the fact. It is important as tending to show how he was driving immediately before; and it would be for you to say, of course truthfully and upon your oaths, whether the manner of driving showed due care,—such care as prudent men ordinarily exercise under like circumstances. The defendant relies further upon the fact, as claimed by it, that Mr. York had been over this ground several times before, since the rocks were there; and knew that they were there; and that if they were objects such as might reasonably be expected to frighten horses, he should have known of that. Mr. York denies that, and says he never had been over the ground since the rocks were there, and upon that proposition there has been the evidence of several witnesses introduced tending to show, if you believe they are correct in it, that he was at Athens at one or more times after the rocks were there. You remember the time in reference to the town meeting, and also the testimony of Mr. Corson. in regard to the time of the Grange meeting, and the testimony coming from Mr. Corson and Mr. Smith tending to show that he drove down over this road. Now, considering this testimony upon the question of due care,—and you will first determine what the fact was, and then, in case you find that he did go over the road, take into

consideration the time of day, or night as may be proved to you and the season of the year,—and determine whether he obtained such knowledge of the location and appearance of those rocks, in case you find he obtained any, as would make it a want of due care on his part to undertake to drive by there. The defendant further urges upon this point the fact, as it claims, that from opposite the Hight house, I think it is called, on the north side of the bridge, as the plaintiff and her husband drove down the road from Brighton to Athens, that those rocks were all in plain view, and could have been seen, and should have been heeded by the plaintiff and the husband, if they were such objects as might be reasonably expected to frighten a safe, kind and gentle horse. Now it is important first for you to take into consideration and determine the fact, because the law does not allow a person to drive heedlessly along a highway and recover for injuries which resulted from his own carelessness and heedlessness. He must use the senses with which nature has endowed him. It is for you to decide under the facts as you find them, the situation as it was,—whether this plaintiff and her husband on that evening, did exercise due care, providing the situation was such as they claim it to be, in driving the horse down by those rocks. If they did not, and any want of due care on her part or on his part in that respect, contributed to the accident, she cannot recover. It is simply one of those unfortunate things for which no one is legally responsible in such an event. In order to render the town liable, as I have said, she must satisfy you of these propositions, and that this line of rocks presented an appearance which would be likely to frighten a horse; and further, on the question of notice, such an appearance that the town might reasonably expect such would be its probable effect,—and by the word "town" I mean the municipal officers whom it is claimed had twenty-four hours actual notice of the defect, if any there was.

Now a great deal of testimony has been introduced in this case as to the exact location of these rocks; as to the width of the traveled way, of the wrought part of the way, and its condition as to smoothness and availability for travel. All that it is important for you to bear in mind, and consider and determine. Where the testimony conflicts, determine what the fact is,—because, as I have said before,

the town is only obliged to keep its ways reasonably safe and con-
venient, and in order to determine that, you see you must take into
consideration all the circumstances and the situation as it existed
there.    Now, as bearing upon that question also, the location of the
rocks may be important, as to whether they were within the traveled
way,—that is, while not within that part between the wagon tracks,
yet within that part which was wrought and intended and designed
for public travel, or as to whether they lay outside of that, and in
the ditch, some part or some portion of them.    But, if, gentlemen,
the plaintiff satisfies you on all the propositions which I have named,
by a preponderance of the evidence,—then still it is for you to deter-
mine whether such a condition as the plaintiff claims, taken in con-
nection with the other circumstances there in regard to that road,
was in fact a defect,—whether in fact, under all the circumstances
and facts of which you are satisfied, bearing upon it and relating to
the condition of that road, it was reasonably safe and convenient.    If
it was, then notwithstanding the rocks frightened the horse, and the
injury resulted from that, yet if as sound practical men you find that
under the circumstances the town had provided a reasonably safe
road, the plaintiff cannot recover.    On the matter of the appearance
of the object, you recollect I called your attention to the fact that its
appearance must be such as would frighten ordinary horses.    Testi-
mony has been introduced on one side and the other as to the effect
of this line of rocks upon other horses.    Well, that is proper for
your consideration, so far as it is shown to frighten other horses or
having failed to frighten other horses.    Of course, in the frightening
of other horses, you should be satisfied as to the character of those
horses, that they were kind, gentle and safe.    You will weigh that
and determine the fact, and get such light from it as you may.
Now, of course, if the plaintiff has failed to satisfy you on any of
these propositions, she cannot recover.    She cannot recover unless
you find that the way was not reasonably safe.    If she has, then she
would be entitled to recover, providing first that the town had
twenty-four hours actual notice of the defect or want of repair.
Now, I understand you claim that on two grounds, Mr. Merrill?

Mr. Merrill:    Two grounds,—first they put them there—

Court: I understand the plaintiff claims that, in the first place the town is not entitled to any notice for the reason that it created the defect itself, through the municipal officers, — the parties who were to have the notice. Now, what is the fact in regard to that? If the officer to whom the notice is to be given himself creates the defect, then the law does not require notice to be given to him of something which he himself has done, and knows; it would be a useless ceremony. Mr. Tomlinson, — you recollect his testimony, says, in substance — you are to take the testimony from your recollection, not from mine, — I simply give it in substance — that he got out these pieces of granite under a contract with the selectmen, and he put them where he was to place them by that contract, — I understand his testimony to amount in substance to that. The selectmen say, — or Mr. Green, at least, — that there was nothing said about that in the contract, as to where he was to place them; that they simply hired him to get out some blocks of granite, and that it is preposterous to suppose that the contract specified he was to string them along the side of this road for two hundred feet to the south side of that bridge. You will determine what the fact is, as reasonable men. If, in the one case they were put in that place by the town, self-creating the defect, and their appearance was such as the officers of the town who had them placed there should reasonably expect that they would frighten ordinarily safe horses, — then no further notice would be required. If not, then the town would still have to have twenty-four hours actual notice of the existence of the defect; and that is notice to the municipal officers or the highway surveyor or road commissioner. In this case, the claim is that he was a municipal officer.

The plaintiff says that even if you should not be satisfied of the fact that the selectmen directed or contracted for these blocks of granite to be placed there, that Mr. Green had actual knowledge that they were there, because he says he saw them there, and that is what actual notice means. Under that statute it means that the municipal officer shall have knowledge, — not merely that he may have known, or ought to have known, — but that he shall have knowledge; and Mr. Green says he was one of the municipal officers and he saw them

there.   Now, if he did, and their appearance was such that he should reasonably apprehend that the natural effect would be to frighten ordinarily safe horses, then he had notice of them as a defect providing the other propositions are made out, and the town would not be entitled to any further notice.   If he did not, the plaintiff cannot recover in this action.   More than that, within fourteen days of the injury there is another notice which the plaintiff is obliged to give, describing the nature and location of the defect and the time and place of the injury, and the damages; and there is no question made in this case but what a notice to that effect was given seasonably, — that is, within fourteen days after the injury.   There is a contention as to its legal effect, but I instruct you the plaintiff has, in substance, sustained the allegation in her writ that this fourteen days notice is sufficient, and that she might recover so far as that is concerned.

There is another ground invoked by the defendant, as I understand, and that is that you can infer and should infer that Mrs. York, as she came upon the road or hill opposite the Hight house looked down upon those rocks and saw them and knew of their existence, and the existence of them as a defect, if they were a defect — I am not talking now about the question of defect, but upon another branch.   Well, if that is so, — if you are satisfied that that is so, — that she knew of this defect, — and I am not assuming it was a defect, — but suppose you should find it is a defect, then she could not recover unless she herself gave the twenty-four hours notice, notwithstanding the selectmen had had twenty-four hours notice. But, in order to place that obligation upon her of the giving of the notice, the law requires that you should be satisfied of knowledge on her part, and that she knew or that she might have known by the exercise of reasonable care, — that is not on the question of due care and diligence.   Neither upon this branch of the case, notice to be given by her, herself, would it be sufficient to put that burden upon her, even if her husband knew that the rocks were there as a defect; that would simply have a bearing upon the question of due care, which I have already explained to you.   Now, if, upon any of these propositions the plaintiff has failed to satisfy you by the weight of

evidence, then she cannot recover.    If upon all of them she has, then you come to the question of damages.    Of course I know not what your conclusion may be.

Now the law fixes the extreme limit of damages in a case of this kind at $2,000.    In no case can you go beyond that.    You have heard the testimony coming from the plaintiff and from the members of the family and the neighbors, watchers and friends, as to Mrs. York's condition both before and after the accident, so far as the plaintiff's testimony goes, tending to show that prior and up to the time of the accident she had been a strong, healthy, well and robust woman, and that, since that time, she has been more or less lame, and has some nervous affection and trouble with her heart,—whatever has been described to you and you are satisfied of.    On the other hand, you recollect the testimony introduced by the defense tending to show, as the defendant claims, that prior to the accident there had been some symptoms similar on the part of Mrs. York. You will determine what the fact is and what the injuries were,— what was her condition prior to the accident,—what the immediate physical effects of the injury, and what they have been from that time down to the present day,—what are they now, and what are they likely to be in the future?    She is entitled to recover, if at all, compensatory damages,—that is a fair, reasonable compensation for the injuries which she has sustained.    It is difficult to measure these matters in dollars and cents, but you are hard-headed, practical men of affairs, exercising your common sense.

Providing you come to this branch of the case you are to determine what is a fair, just and reasonable compensation for the injuries which she has sustained.    She is entitled to recover for the physical suffering, for the amount of suffering which she has sustained, or may sustain in the future, either on account of her future physical condition arising from this injury or from any mental pain in consequence of her lameness which she may feel, or any other result.    She is entitled to recover for her decrease, if any, in earning capacity, and as I say, she can only bring this one suit.    Whatever damages she recovers must be final for this injury, if she is entitled to recover any.

On this branch of the case, you will recollect the testimony introduced by the defendant tending to show, as it claims, that she got up round the house early and did work in regard to the haying operations up to Gilman's and the other places, and there is some testimony about the berrying.  The defendant says in the light of this testimony you should believe that her injuries had been rather exaggerated,—the facts of them, that they have been magnified for the purpose of influencing your minds.  On the other hand, the plaintiff says that getting up as early as she did, while it was a quick and perhaps somewhat remarkable recovery from an accident of this kind, and as it has since proved to be,—that it was the nature of the woman,—that she was smart, ambitious and hard-working, and was not afraid of work, and that there was nothing in the whole transaction on the one side or the other contradictory to the statement she has made in this case upon the stand.

Now, take this case and do with it precisely as you would in any case between party and party.  Towns have just as much rights as individuals.  Individuals the same as towns.  We are all members of some towns, and we are all individuals, and you need not trouble yourselves about the effect of your verdict upon towns or upon individuals.  If your verdict is a true verdict, and if it is in accordance with the law and the evidence and a verdict true as upon your consciences and under your oaths you believe it, then the result will take care of itself.  Justice and public interest simply require a true verdict in each case upon the law and the evidence in that case, and when you render that, you do your entire duty.

I presume you understand that if your verdict is for the plaintiff you will say that the defendants are guilty, and assess damages and the foreman sign it, and if for the defendant, you will say they are not guilty, and the foreman will sign it.

Court:  I am informed that you wish to make some inquiry.

A Juror:  We would like to know what you said about:  If the horse was frightened at the rocks, and the road being reasonably safe.

Court: If I apprehend your question, I will try to answer it. I thought I covered that fully. Of course the question of whether the horse was frightened by the rocks is a material proposition of fact which it is necessary for the plaintiff to prove as one step in her case. Now, if she failed to prove that of course her entire case would fail; that is one step for her to prove by a preponderance of the evidence that the horse was frightened by the rocks. Now it would not follow from that necessarily that the road was not reasonably safe. You see that question depends upon all the facts and circumstances in the case, bearing upon it,— the kind of horse,— whether or not he was a reasonably safe and kind horse, — upon the appearance of the rocks, whether they were of that frightful appearance that it might be reasonably anticipated that that would be their natural effect,—upon that location in the road, — upon the width of the traveled way, and the opportunities for free and unobstructed travel,— you see the very pith of the whole question here is whether the road was reasonably safe, and that is a question for the jury to determine. If it was,— after having settled the facts bearing upon that then determine the final question. That is all the duty which the law imposes upon the town. If it was defective as alleged in the plaintiff's writ, and that frightened the horse, and the injury was caused thereby, you see the town would be liable.

Now I do not know as I have answered your question. I do not know as I apprehend it. Is there anything further?

Juror: If the road was fourteen feet wide, would you consider it safe?

Court: That is one of the facts for the jury to take into consideration. In determining that question what I might think about it is entirely immaterial. That is a question of fact submitted to the jury, not to be determined by any one circumstance, but in view of all the circumstances and the whole situation. That is one of the things to be taken into consideration, but not the sole one.

*E. N. Merrill,* for plaintiff.

*D. D. Stewart and J. F. Holman,* for defendant.

1. Whether the notice within fourteen days after the alleged accident is sufficient, is a question of law; and, if insufficient, the

action cannot be maintained, and the jury should be so instructed. *Rogers* v. *Shirley*, 74 Maine, 144; *Lord* v. *Saco*, 87 Maine, 231. (Must be of the precise spot). *Larkin* v. *Boston*, 128 Mass. 523.

In *Willey* v. *Ellsworth*, 64 Maine, 57, this court said: "The statute gives no right to, and imposes no liability upon towns, as to anything outside the limits of the road."

The notice in the present case describes the alleged defect in the road as being numerous large pieces of granite piled up along the edge, and in the traveled part, and on the westerly side, and in the westerly ditch, for a distance of two hundred feet, and alleges that the horse was frightened by these two hundred feet of granite rocks lying in and outside, of the road.

Suppose the allegation in the notice had been that all of the two hundred feet of granite blocks lay outside of the road, and caused the fright of the horse. It would be clearly bad.

It is impossible to tell, from the present notice, whether the fright was caused by the rocks in, or out of the road; while the notice states specifically that it was caused by the combined effects of both.

It is well settled law in this State and in Massachusetts that towns cannot be held liable, if the accident occured in part through causes originating out of the limits of the highway. *Titus* v. *Northbridge*, 97 Mass. 258; *Rowell* v. *Lowell*, 7 Gray, 100; *Moulton* v. *Sanford*, 51 Maine, 127; *Willey* v. *Ellsworth*, 64 Maine, 57; *Richards* v. *Enfield*, 13 Gray, 346.

In the case last cited the Supreme Court of Massachusetts said: "A city or town is not liable to an action for damages for injuries sustained on the highway, unless the accident is occasioned by causes which occurred entirely within the highway."

The alleged cause of fright in the present notice was, in part, at least, from blocks of granite outside of the highway as traveled. The blocks of granite in the west ditch were as much outside of the road as those west of the road. *Brown* v. *Skowhegan*, 82 Maine, 273.

If the statute requiring the fourteen days notice and description of the defect in the highway which caused the fright of the horse, had been in force when *Moulton* v. *Sanford*, was decided, and if the

notice had alleged that the accident occurred, and was occasioned, by the want of railing on the bridge and by the splash of the musquash in the water, the notice would have been felo de se, and bad.

In *Perkins* v. *Fayette*, 68 Maine, 152, if the notice had alleged and stated that the fright of the horse was caused by a rock in the road, and by several cows in the road with boards on their horns, it would have been equally bad.

2. The request to the court to direct a verdict for the defendants was based upon the fact that the plaintiff's evidence and photographs, show a broad smooth road, abundantly sufficient for all public travel, and that not a block of granite was in the traveled track, as shown by the public user, nor within two feet of it. And the defendants offered proof by actual measurement that the particular rock which the plaintiff claimed as the cause of his horse's fright, was six feet from, and west of any wagon track, and six feet from the traveled part of the road; and that no rock in the alleged two hundred was within two feet of the traveled part of the road.

The evidence and photographs on both sides proved beyond doubt or cavil, that not one of these two hundred rocks was within the traveled road.

It was upon this ground that the defendants asked the court to instruct the jury that the action could not be maintained, in accordance with the decision of this court in *Farrell* v. *Oldtown*, 69 Maine, 72; *Brown* v. *Skowhegan*, 82 Maine, 276, 277; and authorities already cited. *Nichols* v. *Athens*, 66 Maine, 402.

No instruction of the court presented this part of the case to the jury; but they were allowed to determine whether they considered blocks of granite outside of the traveled part of a broad smooth road, defects in the road; when this court had otherwise determined as a question of law. The verdict should be set aside as being wrong per se and against both evidence and law.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

SPEAR, J. This is an action in which the plaintiff recovered the sum of $687.50 in damages for injuries alleged to have been received

by her through a defect in a highway of the defendant town.  The case comes up on motion and exceptions by the defendants.

The exceptions are based upon the refusal of the presiding justice to give the four following instructions:  First, that the fourteen days notice required by the statute, as preliminary to the plaintiff's right of action, was insufficient and illegal; second, at the close of the testimony, that the action could not be maintained because of the insufficiency of the notice; third, that the evidence shew the highway to be safe, suitable and of abundant width for all purposes of public travel; fourth, that blocks of granite outside of the traveled part of the highway, and outside of that part of the road prepared for public travel, constituted no defect in the highway; that the town could not reasonably expect that a block or blocks of granite, outside of the limits prepared by the town for public travel, would frighten ordinary safe and gentle and well-broken horses.

The defect relied upon and the one specified in the fourteen days notice is described as follows:  "Numerous large pieces of granite piled up along the edge and in the wrought part of the highway, for a distance of two hundred feet southerly, from the south end of the bridge in the traveled part, and on the westerly side and in the westerly ditch of said highway.  Said stone or pieces of granite being from four to ten and twelve feet in length, and varying in width and thickness from one to three feet.  In consequence of which the horse became frightened" and caused the accident that produced the injury complained of.  The plaintiff, in the declaration in her writ, described the defect substantially in the language of the notice.

The question raised by the first exception is whether the notice upon its face contains a description of such a defect, as will, if proven, satisfy the requirements of the statute.  The statutory notice requires the averment of several distinct elements, all of which are conceded to be sufficiently stated in the notice before us, except the one relating to the nature and location of the defect.  The defendant's counsel in his brief contends that the averment in the notice that the rocks, at which the horse became frightened, were located partly within and partly without the traveled part of the way, fails to describe any defect as defined by the decisions in this State.  He asserts that, if

the allegation in the notice had been that all the two hundred feet of granite lay outside the road and caused the fright of the horse, it would be clearly bad.    Upon the theory that this is the law, although it has not been judicially determined in this State, see *Nichols* v. *Athens*, 66 Maine, 404, and *Farrell* v. *Oldtown*, 69 Maine, 72, the defendant then proceeds further and asserts that "it is impossible to tell from the present notice, whether the fright was caused by the rocks in or out of the road; while the notice states specifically that it was caused by the combined effect of the two."

We think the plaintiff's contention requires a splitting of the hair a little too fine.    Such refinement would, in this class of cases, defeat the ends of justice.    The object and purpose of the notice, as defined by our court, does not contemplate the distinction as to what particular part of a defect is calculated to do the mischief.    If a town sees fit to strew along the side of the road a pile of rocks, or any other obstruction, partly within and partly without the wrought part of the way, the part within constituting a defect, per se, such pile as a whole constitutes a defect, provided the proof goes further and shows that it is calculated, as a whole, to present an appearance that would be likely to frighten ordinary horses; and the appearance of the object is such that it should reasonably be expected by the town that it naturally might have that effect.    *Card* v. *Ellsworth*, 65 Maine, 547, 555, 20 Am. Rep. 722.    The plaintiff's notice describes such a defect, namely, the pile of granite, as a whole, partly within and partly without the wrought or traveled part of the way.    The object of that part of the notice we are now considering is simply to describe the nature and location of the alleged defect.    It is not for the court to say primarily whether what it describes is a defect or not.    That is ordinarily a question of fact for the jury.    The notice may describe something that does not exist at all, that is purely imaginary.    But the court has nothing to do with that question in construing the notice.    Its province is to determine whether the notice, upon its face, describes, with sufficient accuracy, the nature and location of the defect alleged, to warrant a submission to the jury of the question whether, what is described is a defect, and the defect claimed.

Whether the proof sustains the notice has nothing to do with its legal sufficiency.

The notice then, we think, was sufficient to require the submission to the jury of the questions of fact, first, whether a part of the granite was so placed in the wrought part of the way as to constitute a defect, per se; and second, whether the pile of rocks as a whole was calculated to frighten ordinary horses, as held in *Card* v. *Ellsworth,* supra.

The second exception is to the refusal of the court "at the close of the evidence to instruct the jury that the action could not be maintained because of the insufficiency of the notice." We are unable to determine just what this exception means. The sufficiency of the notice has already been determined under the first exception. If it means that the proof did not sustain the declaration in the notice, that was a question of fact and was properly submitted to the jury.

The third exception clearly involves a question of fact, not of law.

The fourth is based upon the assumption that the blocks of granite that frightened the plaintiff's horse were situated wholly without the wrought part of the way. But the jury did not so find. The notice did not so state, nor did the plaintiff at the trial so contend. On the contrary, it was claimed that it was the entire line of granite blocks taken together and collectively, those within, without and on the edge of the road, and not any single or particular block that constituted the defect. The presiding justice charged the jury that the burden was upon the plaintiff to show that those rocks situated in substance, as she has described them in her writ, frightened the horse. This instruction was based upon the evidence which tended to show that it was the combined effect of all the rocks in their entirety, considered as one object, that was calculated to present such an appearance as to frighten the plaintiff's horse. The testimony therefore does not support the defendant's fourth request.

"It is well settled that, if an instruction cannot be given entire with legal propriety, no exception can be taken, because not given in a modified form." *Franklin Bank* v. *Cooper,* 39 Maine, 552. A fortiori, could no exception be taken if the modified form was not requested. The refusal to give a requested instruction, sound as an

abstract legal proposition, but inapplicable, is not open to exception. *Norton* v. *Kidder*, 54 Maine, 189. The presiding justice rightfully withheld the requested instructions.

A careful reading of the testimony and an examination of the photographs of the locus, do not convince us that the jury so erred in finding a verdict for the plaintiff as to warrant us in setting it aside. The law was clearly and carefully given by the presiding justice and every question of fact fully and fairly submitted. We do not deem it necessary or profitable to give an analysis of the evidence. There was, as there is in most cases, a conflict of testimony, but the jury found in favor of the plaintiff and we must let the verdict stand.

*Motion and exceptions overruled.*